

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

APR - 9 2012

CLERK, U.S. DISTRICT COURT
By_____
            Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| HEATHER R. DASHTI, | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-CV-196-A |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation of

the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Heather R. Dashti ("Dashti"), proceeding *pro se*, filed this action pursuant to

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final

decision of the Commissioner of Social Security denying her claim for disability insurance benefits

under Title II of the Social Security Act ("SSA").  In October 2007, Dashti protectively applied for

disability insurance benefits, alleging disability commencing on November 1, 2001.[1]  (Tr. 16, 100-

---

[1] Dashti also filed a claim for Supplemental Security Income ("SSI") benefits under Title XVI.  (Tr. 16, n.1; *see* Tr. 92-99, 105-16.)  This application was initially denied but, upon reconsideration, "they determined claimant was disabled as of the protective filing date of that application."  (*Id.*)  Consequently, the ALJ stated that the SSI application was not before him and did not address "the period after December 31, 2006" in his decision.

1

04.)  Dashti last met the disability insured status requirements of Title II on December 31, 2006. (Tr. 16.)

After her application for benefits was denied initially and on reconsideration, Dashti requested a hearing before an administrative law judge (the "ALJ").  (Tr. 16; *see* Tr. 59-62.)  The ALJ held a hearing on May 26, 2009 and issued a decision on July 29, 2009, in which he found that Dashti was not disabled and was not entitled to disability insurance because she retained the ability to perform several jobs that occurred in significant numbers in the national economy.  (Tr. 13-24, 35-45).  The Appeals Council denied Dashti's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner.  (Tr. 6-10.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq*., and numerous regulatory provisions.  *See* 20 C.F.R. Pt. 404.  The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity.  Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit.  20 C.F.R. § 404.1527.  Second, the claimant must have an impairment or combination of impairments that is severe.  20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).  Third, disability will be found if the impairment or combination of impairments meets or equals an

2

impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R. § 404.1520(d).  Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work.  *Id.* § 404.1520(e).  And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience.  *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).  At steps one through four, the burden of proof rests upon the claimant to show he is disabled.  *Crowley,* 197 F.3d at 198.  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments.  *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion.  *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).  It is more than a mere scintilla, but less than a preponderance.  *Id.*  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present.  *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.

### III. ISSUES

In her brief, Dashti sets forth ten issues.  (Pl.'s Br. at 3-5; *see* Pl.'s Br. at 8-13.)  However, a after closely examining the issues presented by Dashti, the Court concludes that the following issues are actually presented:[2]

1.  Whether the ALJ erred in not finding that Dashti met sections 1.02, 12.04, or 12.08 of the Listing;

2.  Whether the ALJ's determination that Dashti is not disabled is supported by substantial evidence;

3.  Whether the evidence submitted by Dashti to the Court after the ALJ's decision constitutes new and material evidence;

4.  Whether the ALJ erred by finding that Dashti was qualified to receive SSI benefits and then finding that Dashti was not qualified to receive disability insurance benefits; and

5.  Whether the SSA's determination that it overpaid Dashti SSI benefits is erroneous and discriminatory.

### IV. ADMINISTRATIVE RECORD AND ALJ DECISION

In his July 29, 2009 decision, the ALJ found that Dashti met the disability insured status requirements of the SSA through December 31, 2006 and that she had not engaged in substantial gainful activity since November 1, 2001, the date of her alleged onset of disability.  (Tr. 16, 22.) The ALJ further found that Dashti had the severe impairments of (1) major depressive disorder, with borderline personality disorder traits, and (2) degenerative changes in the right knee.  (Tr. 22.) Next, the ALJ held that none of Dashti's impairments or combination of impairments met or equaled the severity of any impairment in the Listing, including sections 1.02,[3] 12.04, or 12.08.  (Tr.

---

[2] The Court notes that Dashti's presentation of the issues was very unclear and difficult to decipher.

[3] The Court notes that the ALJ actually referred to section 1.2 instead of 1.02 in his decision.  However, this appears to be a typographical error as there is not a section 1.2 in the Listing.

22.)  As to Dashti's physical residual functional capacity ("RFC"), the ALJ stated that "claimant retained the exertional capacity for the sustained performance of a wide range of light work activities: she could not walk for prolonged periods over ten continuous minutes and she could not climb or crawl scaffolds or ladders." (Tr. 23; *see* Tr. 21.)  As to Dashti's mental RFC, the ALJ found that Dashti "was not able to perform complex work instructions." (Tr. 23; *see* Tr. 20.)  The ALJ opined, based on his RFC assessment, that Dashti was not able to perform her past relevant work as a "clothing or jewelry retail salesperson or PBX operator during the critical period." (Tr. 23; *see* Tr. 21.)  The ALJ found, however, that there were several jobs that existed in significant numbers in the national economy that Dashti could perform. (Tr. 21-23.)  Thus, the ALJ found that Dashti was not disabled. (Tr. 23-24.)

## V. DISCUSSION

### A. <u>Step 3: Meet or Equal a Listing</u>

Dashti argues that the ALJ erred in finding at Step Three that her mental impairments did not meet the requirements of sections 12.04 (affective disorders) or 12.08 (personality disorders) of the Listing and that her right knee impairment did not meet the requirements of section 1.02 (major dysfunction of a joint). (Pl.'s Br. at 3, 8.)  To obtain a disability determination at Step Three, a claimant must show that his impairments meet or equal one of the impairments in the Listing, 20 C.F.R. Pt. 404, Subpt. P, App. 1.  As a threshold matter, the ALJ is responsible for ultimately deciding the legal question whether a listing is met or equaled. SSR 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996); *see generally* SSR 96-5p, 1996 WL 374183, at *3 (S.S.A. July 2, 1996); 20 C.F.R. §§ 404.1526(e), 404.1527(e).

Whether a claimant's impairment meets the requirements of a listed impairment is usually more a question of medical fact than opinion because most of the requirements are objective and simply a matter of documentation, but it is still an issue ultimately reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *3. Whether the impairment is equivalent in severity to the requirements of a listed impairment requires a judgment that the medical findings equal a level of severity that prevents a person from doing any gainful activity. *Id.* at *4. Because a finding of equivalence requires familiarity with the regulations and the legal standard for severity, it is also an issue reserved to the Commissioner. *Id.* When determining whether an impairment medically equals a listing, the Commissioner considers all relevant evidence[4] in the record about such impairment, including findings from medical sources. 20 C.F.R. § 404.1526(c). Medical equivalence must be based on medical findings that are supported by medically acceptable clinical and laboratory diagnostic techniques. *See generally* 20 C.F.R. §§ 404.1526, 404.1527.

The claimant has the burden of proving that his impairment or combination of impairments meets or equals a listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). "For a claimant to show that his impairment matches [or meets] a listing, it must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530 (emphasis in original). An impairment, no matter how severe, does not qualify if that impairment exhibits only some of the specified criteria. *Id.* If a claimant does not exhibit all of the requisite findings of a listed impairment, medical equivalence may be established by showing that his unlisted impairment, or combination of impairments, is equivalent to a listed impairment. *Id.* at 531. To do so, the

---

[4] Relevant evidence does not include the claimant's vocational factors of age, education, and work experience. 20 C.F.R. § 416.926(c).

claimant must present medical findings equal in severity to all the criteria for the one most similar listed impairment. *Zebley*, 493 U.S. at 531 (*citing* 20 C.F.R. § 416.926(a)). A claimant's disability is equivalent to a listed impairment if the medical findings are at least equal in duration and severity to the listing findings. *See id.* The court will find that substantial evidence supports the ALJ's finding at Step Three if the plaintiff fails to demonstrate the specified medical criteria. *Selders*, 914 F.2d at 619-20.

In this case, the ALJ specifically found at Step Three that Dashti's impairments did not meet or equal the required criteria for any of the impairments listed under sections 1.02, 12.04, 12.08 "or any other impairment found in the Listing of Impairments." (Tr. 22.) Although the ALJ did not specifically indicate the reasons for this finding, he did acknowledge the following evidence in his decision: (1) "[c]laimant was independently mobile despite the right knee injury and she had no upper extremity limitations or restrictions" (Tr. 21); (2) "[t]here [was] no evidence claimant undertook any lifestyle adaptations or home environment alterations to accommodate the impairment-driven restrictions she describes in the critical period or that there were indicia of intractable pain, such as unexplained weight change, disuse muscle atrophy, guarding or premature aging" (Tr. 21); (3) "[c]laimant had a wide range of daily activities, including raising infant twins and then a third child born when the twins were about two and one-half while her husband worked and attended school" (Tr. 20); and (4) "[c]laimant did not require in-patient psychiatric care, frequent, intense outpatient counseling, supervised or assisted living services and she only briefly took an anti-psychotic medication" (Tr. 20).

Even assuming that the ALJ erred at Step Three by failing to provide adequate reasons for his adverse findings, remand would be necessary only if the claimant's substantial rights have been

7

affected. *See Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Brock v. Chater*, 84 F.3d, 726,

728 (5th Cir. 1996) ("To establish prejudice, a claimant must show that he could and would have

adduced evidence that might have altered the result.") (internal quotation marks omitted)); *Mays v.*

*Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings

is not required" as long as "the substantial rights of a party have [not] been affected."); *Hurtado v.*

*Astrue*, No. H-07-3486, 2008 WL 3852361, at *3 (S.D. Tex. Aug. 15, 2008).  To be entitled to

relief, the claimant must establish that the ALJ erred and that the ALJ's error casts into doubt the

existence of substantial evidence to support the ALJ's decision.  *Morris v. Bowen*, 864 F.2d 333,

335 (5th Cir. 1988).

In this case, Dashti has failed to meet her burden of establishing prejudice as she has not

presented any <u>specific</u> evidence or argument suggesting that any of her impairments met or equaled

a listed impairment.  *See Hurtado*, 2008 WL 3852361, at *3 ("Hurtado does not list the criteria for

this disorder, nor does she cite to specific record evidence purporting to satisfy those criteria.

Instead, she merely waves in the general direction of the 'medical record, and Ms. Hurtado's

consistent testimony,' and asks for a remand.  This will not do."); *see also Perez v. Barnhart*, 415

F.3d 457, 462 n.4 (5th Cir. 2005) (holding that inadequately briefed arguments are waived).

Furthermore, the record does not indicate a likelihood or even reasonable possibility that Dashti's

impairments met or equaled a listed impairment.  As to her knee impairment, there is, even at the

bare minimum, no evidence during the relevant time period[5] that such impairment was

characterized by gross anatomical deformity that resulted in an inability to ambulate effectively as

---

5 The relevant time period is between November 1, 2001, the alleged date Dashti became disabled, and December 31, 2006, the date Dashti last met the disability insured status requirements of Title II. (Tr. 16; *see* 42 U.S.C. § 414; 20 C.F.R. 404.130.)

8

defined in section 1.00B2b and required by section 1.02 of the Listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.00B2b, 1.02(A). As to her mental impairments, at the very least, there is no evidence that Dashti suffered from at least *two* of the following as required to satisfy part of the *relevant* requirements of Listings 12.04 or 12.08: *marked* restrictions of activities of daily living; *marked* difficulties in maintaining social functioning or concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.[6] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.08. Because Dashti has not demonstrated that she suffered prejudice as a result of any alleged deficiencies in the ALJ's discussion, remand is not required.

## B. Substantial Evidence

The next issue is whether the ALJ's disability determination is supported by substantial evidence. With respect to this issue, Dashti argues the following: (1) "There is an error of Social Security Law for which their decisions are not supported in this case despite the weight of medical evidence given in favor of the Plaintiff" (Pl.'s Br. at 3); (2) "The Administrative Law Judge made errors in his final decision based upon misinterpretations of evidence, and in his rendering of judgment of denial (*leading it to be vague upon his own presumption and his own uncertainty while verifying Plaintiff's disabilities meeting all criterias*), as well as the lack of evidence used, thereby leaving open the plausibility of validating Plaintiff's claim" (Pl.'s Br. at 3 (emphasis in original)); (3) "There is a broad policy or procedural issue that affects the Public's Interest, that being the way

---

[6] In a Psychiatric Review Technique Form ("PRTF") dated March 3, 2008, Charles McDonald, Ph.D. ("McDonald"), opined that Dashti was mildly restricted in her activities of daily living; had mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and had no episodes of decompensation. (Tr. 285; *see* Tr. 275-288.) In a PRTF dated April 11, 2008, Cate Miller, M.D. ("Miller"), opined that Dashti was moderately restricted in her activities of daily living; had moderate difficulties in maintaining social functioning, concentration, persistence, or pace; and had no episodes of decompensation. (Tr. 380; *see* Tr. 370-383.) Both McDonald and Miller opined that the evidence did not demonstrate a mental impairment or combination of impairments that met or equaled the criteria of an impairment in the Listing. (Tr. 275-92, 370-87.)

. . . Social Security Administration[] redefines and/or manipulates medical and/or mental illness evidence, without regards to the full spectrum of DSM IV Classifications and history, thereby, discriminating all who fall into such certain 'categories'', which [the Administration] claims to uphold through their evaluations" (Pl.'s Br. at 4 (emphasis omitted)); and (4) "Damages done to Plaintiff H.R. Dashti's dominant right knee (*displacing added force upon the left*), is ongoing" (Pl.'s Br. at 4 (emphasis in original)).

In this case, the ALJ ultimately determined that Dashti was not disabled because there were a significant number of jobs in the national economy that Dashti could have performed in the critical period. (Tr. 23.) Before coming to this conclusion, the ALJ found that Dashti had the RFC[7] to perform a "wide range of relatively less strenuous light work duties" as long as she did not walk for prolonged periods over ten continuous minutes, did not climb or crawl on scaffolds or ladders, and was limited to non-complex work instructions. (Tr. 20-21, 23.)

---

[7] RFC is what an individual can still do despite her limitations. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id. See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. *Id.* RFC is not the least an individual can do, but the most. SSR 96-8p at *2. The RFC assessment is a function-by-function assessment, with both exertional and nonexertional factors to be considered and is based upon all of the relevant evidence in the case record. *Id.* at *3-5. The ALJ will discuss the claimant's ability to perform sustained work activity on a regular and continuing basis, and will resolve any inconsistencies in the evidence. *Id.* at *7. In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, and must consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

In making his RFC and disability determination, the ALJ relied, *inter alia*, on the following evidence in the record: (1) records from John Peter Smith Hospital ("JPSH") showing that Dashti was an established patient in the outpatient psychiatric clinic (Tr. 17; *see* Tr. 158-260); (2) emergency psychiatric examination dated April 11, 2005 in which Elma Granado, MD, diagnosed Dashti with "depressive disorder, NOS, with a rule-out diagnosis of major depressive disorder, single episode, post-partum, and advised claimant she could take Zoloft" (Tr. 18; *see* Tr. 17-18, 239-51); (3) the fact that Dashti did not file her disability application until approximately six years after her alleged onset date which the ALJ found was "an indication that [Dashti] did not consider she was unable to work at the distant date she now proposes" (Tr. 18); (4) Dashti's subjective complaints (Tr. 18-19); (5) outpatient psychiatric examination notes dated in 2005 indicating that Dashti's mental impairments had improved over time and with an adjustment in her medications (Tr. 19-20); (6) outpatient psychiatric examination notes dated in 2006 showing that Dashti was also diagnosed with borderline personality disorder but that her condition "was stable through the critical period" (Tr. 20); (7) the fact that most of Dashti's outpatient psychiatric care was provided by a registered nurse, not a psychiatrist (Tr. 20); (8) evidence from the State Agency Medical Consultants ("SAMCs"), which the ALJ stated "does not establish that claimant had incapacitating mental limitations in [the relevant] period"[8] (Tr. 20); (9) the fact that Dashti "did not require in-patient psychiatric care, frequent, intense outpatient counseling, supervised or assisted living services and . . . only briefly took an anti-psychotic medication" (Tr. 20); (10) the fact that Dashti was involved in a wide range of daily activities and there was "no indication in the record of gross

---

[8] The ALJ actually stated that the SAMCs "proposals [were] not entirely supported by the evidence, but . . . agree[d] the evidence [did] not establish that the claimant had incapacitating mental limitations in that period." (Tr. 20.)

emotional irregularities and there is no confirmed post-onset record of bizarre, aberrant or harmful behavior" (Tr. 20); (11) evidence from an examination in November 2007 that Dashti had a tear in the meniscus cartilage of her right knee, had not responded to conservative care, but had no "acute tenderness upon palpation, . . . had full ranges of motion,  . . . strength 4-5/5, and . . . was neurovascularly intact" (Tr. 20; *see* Tr. 162-63); (12) opinions by SAMCs that Dashti could "perform only light base-level work activities" (Tr. 21; *see* Tr. 293-300, 388); and (13) the fact that there was no evidence Dashti "undertook any lifestyle adaptations or home environment alterations to accommodate the impairment-driven restrictions she describes in the critical period or that there were indicia of intractable pain, such as unexplained weight change, disuse muscle atrophy, guarding or premature aging" and was "independently mobile despite the right knee injury"  (Tr. 21).

The focus of Dashti's argument appears to be that the ALJ's determination is not supported by substantial evidence because the ALJ misinterpreted or manipulated the evidence, ignored certain evidence, or relied on inconsistent evidence. (*See, e.g.,* Pl.'s Br. at 3-4, 7-9.) Although the ALJ's written findings are not perfect, the ALJ ultimately determined, based on substantial medical evidence and other evidence in the record, that Dashti was not disabled because she was, based upon her RFC determination, capable of performing work that existed in significant numbers in the national economy.  Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected. *Audler v. Astrue,* 501 F.3d 446, 448 (5th Cir. 2007) (stating that ALJ's omission does not require remand unless it affected claimant's substantial rights). Although the ALJ did not discuss every single medical finding in the record, there is no evidence that, even if the ALJ had discussed every such finding and opinion, the result

12

would be altered. The ALJ's decision is not subject to reversal, even though there may be substantial evidence in the record that would have supported the opposite conclusion, because substantial evidence also supports the conclusion that was reached by the ALJ. *See Dollins v. Astrue*, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) and *Steed v. Astrue*, 524 F.3d 872, 874 (8th Cir. 2008)). Furthermore, as to the evidence referred to by Dashti that is dated after December 31, 2006, Dashti's date of last insured status, such evidence is generally not relevant to the ALJ's decision as it only shows possible deterioration in Dashti's condition after the expiration of her insured status. *See* 20 C.F.R. § 404.131; *Torres v. Shalala*, 48 F.3d 887, 894 n.12 (5th Cir. 1995); *Leon-Martinez v. Astrue*, No. SA-08-CA-448-XR, 2009 WL 1833592, at *5 (W.D. Tex. June 25, 2009) ("Evidence showing a degeneration of a claimant's condition after the expiration of insured status is not relevant to the disability analysis.").

Based upon the above, it is clear that the ALJ discussed the evidence in the record in making his disability determination, adequately explained the reasoning for such determination and for giving less weight to certain evidence, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Because there is substantial evidence in the record that supports the ALJ's disability determination, the Court concludes that remand is not required.

## C.  New and Material Evidence

Dashti submitted the following documents to the Court with her brief: (1) examination records showing that Dashti sought psychiatric treatment from JPSH in July and August 2002 for depression and was prescribed medication (Pl.'s Br. at 15-26); (2) a document dated April 11, 2005 showing that Dashti was discharged and instructed to follow up with the JPSH outpatient clinic in two weeks (Pl.'s Br. at 27); (3) documents dated August 22, 2007 indicating that she was trying to "get back into the Behavioral Health program since out due to trying to have a healthy pregnancy" and that she wanted to be heard and "not written off or dismissed with premisguided assumptions" (Pl.'s Br. at 30; see Pl.'s Br. at 28-30); (4) "Consultation/Service Transfer Report" dated July 19, 2006 in which "Dr. Kumar" noted that Dashti felt depressed and requested Dashti undergo neuropsych testing (Pl.'s Br. at 31; see Pl.'s Br. at 32); (5) results of "psych testing" dated December 4, 2006 in Ed Bleker, Ph.D. ("Bleker"), which: (a) diagnosed Dashti with bipolar disorder; (b) stated she had difficulties in maintaining thought organization, direction, and focus; and (c) noted she was "at significant risk for further deterioration into frank psychotic disorganization" (Pl.'s Br. at 32-33); (6) a "Consult and Change of Service Orders" dated June 19, 2007 in which Helene Alphonso, D.O., requested that Bleker consult with Dashti regarding "bipolar vs MDD" (Pl.'s Br. at 34, 42); (7) examination notes dated June 19, 2007 from JPSH indicating that Dashti had stopped taking her medications due to being pregnant, was diagnosed with depression, was prescribed Zoloft, and was "markedly ill" (Pl.'s Br. at 35-41, 43-49); (8) a "Medical Release/Physician's Statement" dated December 31, 2007 in which Karen B. Price, M.D. opined that Dashti suffered from "Bipolar Disorder NOS" and that her disability was permanent (Pl.'s Br. at 51); (9) a letter dated September 22, 2011 in which Laura Droz, QMHP-CS, stated that Dashti

14

received services at MHMR of Tarrant County from October 9, 2007 through October 14, 2009 and

was diagnosed with Bipolar Disorder NOS and Borderline Personality (Pl.'s Br. at 52); (10) medical

records dated December 8, 2010 in which Christopher Wong, M.D., diagnosed Dashti with shoulder

pain, impingement, "AC arthritis," left hand mild CTS, and cubital tunnel of the right elbow (Pl.'s

Br. at 53-54); (11) an informational sheet titled "Fibromyalgia" (Pl.'s Br. at 55); (12) results of

nerve and EMG studies dated April 6, 2011 regarding Dashti's leg pain and numbness (Pl.'s Br. at

56-57); (13) a letter dated July 13, 2010 from the SSA informing Dashti that she had been overpaid

$10,846 on SSI (Pl.'s Br. at 58-62); (14) undated personal notes from Dashti regarding the

overpayment (Pl.'s Br. at 63-69); and (15) several articles from various sources regarding bipolar

disorder (Pl.'s Br. at 70-76).

 Dashti appears to be arguing, in essence, that the above-described records are "new and

material" evidence, and, thus, require the Court to remand the case for consideration of this

evidence. "When new evidence becomes available after the Secretary's decision and there is a

reasonable probability that the new evidence would change the outcome of the decision, a remand is

appropriate so that this new evidence can be considered." *Ripley v. Chater*, 67 F.3d 552, 555 (5th

Cir. 1995) (citing 42. U.S.C. § 405(g) & *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994)).  The

Court does not issue factual findings on new medical evidence but is to determine whether to

remand for the consideration of the newly presented evidence.  *Haywood v. Sullivan*, 888 F.2d

1463, 1471 (5th Cir. 1989).  "To justify a remand, 42 U.S.C. § 405(g) requires that the evidence is

'new' and 'material' as well as a showing of 'good cause' for failing to provide this evidence at the

original proceedings." *Ripley*, 67 F.3d at 555.  To be new, the evidence must not be merely

cumulative of the evidence already in the administrative record.  *Pierre v. Sullivan*, 884 F.2d 799,

803 (5th Cir. 1989).  For evidence to be material, it must relate to the time period for which disability benefits were denied and there must be a reasonable probability that the new evidence would change the outcome of the Commissioner's decision.  *Ripley*, 67 F.3d at 555; *see Sullivan*, 884 F.2d at 803.

To begin with, as to the medical records submitted to the Court by Dashti that are dated after December 31, 2006, the Court finds that such records are not relevant to the relevant time period for which Dashti seeks disability benefits and, thus, are not material.  *See Ripley*, 67 F.3d at 555; *see also Torres*, 48 F.3d at 894 n.12; *Leon-Martinez*; 2009 WL 1833592, at *5.  As to all the other evidence submitted by Dashti to the Court, the Court finds that Dashti has not demonstrated good cause for failing to obtain and submit such evidence during the administrative proceedings.  This evidence appears to have been available to Dashti and in existence long before the ALJ rendered his decision on July 29, 2009.  Dashti has provided no explanation as to why such evidence was not obtained and submitted to the ALJ in a timely manner during the administrative proceedings.  Dashti argues that that the Commissioner should have "obtained" these additional medical records.  (Pl.'s Br. at 7-13.)  However, it is apparent from the ALJ's decision that the Commissioner attempted to obtain such records as the ALJ stated: "It is difficult to obtain distant medical records (Ms. G Jackson, a JPS out-patient clinic psychiatric nurse, noted prior records were unavailable at a July 07, 2005 exam . . .)."  (Tr. 18.)  Moreover, the burden is on Dashti, not the ALJ, to show good cause for her failure to obtain and submit such evidence.  Because Dashti has failed to meet her burden as to the submission of the allegedly new and material evidence, the Court concludes that remand is not required.

### D. **SSI Benefits**

The next issue is whether the defendant erred by finding, in a previous decision, that Dashti was qualified to receive SSI benefits and then finding, in the current decision before the Court, that Dashti was not qualified to receive disability insurance benefits.  In support, Dashti states:

> Under the governance of the Social Security Administration, . . . Dashti[] was deemed disabled according to S.S.A.'s rules and procedures for qualifying for Social Security Insurance, prior to financial entitlement of said agency, thereby leading the evidence to show that they (S.S.A.) acknowledged and were aware of Plaintiff's disabilities status, irregardless of monetary factors.  Thus, . . . Dashti had already satisfied criterias imposed by S.S.A.

(Pl.'s Br. at 3-4.)

Dashti's argument, however, is not valid as there is a difference in the eligibility requirements for a claimant to receive SSI benefits as opposed to the eligibility requirements to receive disability insurance benefits.  SSI benefits, authorized by Title XVI of the Act, 42 U.S.C. §§ 1381-1383c, provide assistance to a disabled needy claimant without regard to the claimant's coverage under the act for disability insurance benefits.  *See Thomas v. Schweiker*, 666 F.2d 999, 1001 n.1 (5th Cir. 1982).    To be eligible for SSI benefits, a claimant must be disabled and must have sufficiently limited income and resources.  42 U.S.C. §§ 1382c, 1382(a).  On the other hand, to qualify for disability insurance benefits, a claimant must meet certain insured status requirements, be under 65, file an application for such benefits, and be under a disability as defined by the Social Security Act.  42 U.S.C. §§ 416(i), 423.

Since there are different eligibility rules for receiving SSI benefits and disability insurance benefits, the fact that Dashti has been found eligible to receive SSI benefits does not automatically mean that she is also eligible to receive disability insurance benefits.  As stated above, because the

17

ALJ's decision denying disability insurance benefits is supported by substantial evidence, remand is not required.

### E. Overpayment of SSI Benefits

The final issue is whether the SSA's determination in a separate decision not currently before the Court that Dashti was overpaid SSI benefits is erroneous and discriminatory. The action currently before this Court involves issues relating to the ALJ's July 29, 2009 decision that Dashti was not disabled and, thus, not entitled to receive disability insurance benefits under Title II during the period from November 1, 2001 to December 31, 2006. The Court, pursuant to 42 U.S.C. § 405(g) is only authorized to review a "final decision of the Commissioner of Social Security made after a hearing." Because there is no evidence that Dashti obtained a judicially reviewable "final decision" with regard to any overpayment, the Court does not have jurisdiction to review this issue. *See* 20 C.F.R. §§ 404.900, 416.1400; *Heckler v. Ringer*, 466 U.S. 602, 604 (1984) (dismissal appropriate because of failure to exhaust administrative appeals remedies); *Polonczyk v. U.S. v. Social Sec. Disability*, No. 1:10cv250-LG-RHW, 2011 WL 1356936, at *3-4 (S.D. Miss. Mar. 3, 2011).

### RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has

been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **April 23, 2012** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED April 9, 2012.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

19